## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **RAY D. POTTS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. CIV-16-261-SPS** |
| ) | |
| **NANCY A. BERRYHILL,** ) | |
| **Acting Commissioner of the Social** ) | |
| **Security Administration,** [1] ) | |
| ) | |
| **Defendant.** ) | |

## OPINION AND ORDER

The claimant Ray D. Potts requests judicial review of a denial of benefits by the
Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He
appeals the Commissioner's decision and asserts that the Administrative Law Judge
("ALJ") erred in determining he was not disabled. For the reasons discussed below, the
Commissioner's decision is hereby REVERSED and the case is REMANDED to the ALJ
for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in
any substantial gainful activity by reason of any medically determinable physical or
mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social
Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn W.
Colvin as the Defendant in this action.

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born on June 11, 1970, and was forty-four years old at the time of the most recent administrative hearing (Tr. 235). He has a high school education, and has worked as a meter reader and municipal worker (Tr. 64-65, 259). The claimant alleges that he has been unable to work since April 11, 2011, due to a left ankle injury, chronic ankle pain, knee pain, and stiffness and tendonitis in his hands (Tr. 235, 258).

### Procedural History

On September 6, 2011, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 (Tr. 235-36). His application was denied. ALJ Edmund Were conducted an administrative hearing and found that the claimant was not disabled in a written opinion dated May 9, 2013 (Tr. 113-22). The Appeals Council remanded the case on June 11, 2014 (Tr. 127-29). On remand, ALJ Edmund Were conducted another administrative hearing and again found that the clamant was not disabled in a written opinion dated May 13, 2015 (Tr. 17-38). The Appeals Council denied review, so the ALJ's May 2015 written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform a limited range of light work as defined in 20 C.F.R. § 404.1567(b), *i. e.,* he could lift/carry ten pounds frequently and twenty pounds occasionally; sit/stand/walk six hours out of an eight-hour workday; frequently handle, finger, or feel bilaterally; never climb ladders, ropes, or scaffolds; and never be exposed to temperature extremes, humidity extremes, or wetness (Tr. 24). The ALJ then concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work in the national economy he could perform, *e. g.,* counter clerk, conveyor line bakery worker, call out operator, and semiconductor bonder (Tr. 37).

## Review

The claimant contends that the ALJ erred by failing to properly analyze the opinion of treating physician Dr. Green, and the Court agrees. The Commissioner's decision must therefore be reversed and the case remanded for further proceedings.

The ALJ found that the claimant's degenerative joint disease in the left ankle, osteoarthritis right knee post ACL repair, and degenerative changes at the first carpometacarpal joints and old healed right fifth metacarpal fracture were severe impairments, but that his alleged anxiety and depression were non-severe (Tr. 21). The medical evidence relevant to this appeal reveals that the claimant underwent arthroscopic debridement with resection of small tibial osteophytes on his left ankle in October 2000 (Tr. 462-63). Dr. Watts released the claimant from care without work restrictions on

May 7, 2001, noting the claimant still reported pain, but had no treatable objective abnormalities (Tr. 449).

Between September 2009 and September 2014, Dr. Green consistently treated the claimant with medication for left ankle synovitis, and often found tenderness and/or mild swelling in his ankle on physical exam (Tr. 395-416, 488-97, 531-37). Dr. Green began treating the claimant for bilateral tendonitis in his hands in June 2011, noting recent nerve conduction studies found no evidence of carpal tunnel syndrome (Tr. 398). Dr. Green prescribed wrist splints when the claimant was "working in the yard or doing any lifting," but his treatment otherwise consisted of medication management (Tr. 398-99).

On May 10, 2011, the claimant presented to Dr. Lewis for left ankle pain (Tr. 472). Dr. Lewis found no remarkable swelling or effusion, but the claimant did have a positive anterior drawer test as well as decreased range of motion in his ankle (Tr. 472). Dr. Lewis referred the claimant for an MRI, the results of which did not show significant articular cartilage or osteochondral lesions, but did show a moderate-sized anterior tibial osteophyte (Tr. 469). Dr. Lewis indicated that lateral ligament reconstruction surgery and removal of the osteophyte could be expected to relieve at least some of the claimant's symptoms (Tr. 469).

Dr. Schatzman completed a consultative physical examination of the claimant on December 6, 2011 (Tr. 417-423). He found full grip strength in the claimant's hands and indicated the claimant could do both gross and fine manipulation (Tr. 418). Dr. Schatzman also noted some joint effusion, marked tenderness of the patella, and medial joint line tenderness on the claimant's right knee, but found the claimant had full range of

motion (Tr. 418-19). Dr. Schatzman further found generalized tenderness about the claimant's left ankle with full range of motion (Tr. 419-20). The claimant had a safe, stable gait with appropriate speed and did not limp (Tr. 419). He was able to heel walk, toe walk, tandem walk, and squat without difficulty (Tr. 419). Dr. Schatzman assessed the claimant with knee pain, residuals of left ankle sprain, and chronic pain syndrome, and opined that the claimant should be considered for vocational rehabilitation (Tr. 419).

On July 30, 2012, the claimant underwent arthroscopic allograft anterior cruciate ligament ("ACL") reconstruction surgery on his right knee (Tr. 476-78). Thereafter, he reported occasional swelling and intermittent pain to Dr. Deloache in September 2012, and by November 2012 he reported his knee was doing fine (Tr. 504). At a follow-up appointment with Dr. Deloache on February 8, 2013, the claimant reported little to no knee pain and no instability (Tr. 503). Dr. Deloache found "excellent motion to flexion/extension with excellent stability," no tenderness, and no instability on exam, and released the claimant for general activities and follow-up care only as needed (Tr. 503).

Following his July 2012 knee surgery, and continuing through September 2014, the last treatment note in the record, the claimant consistently reported extreme right knee pain to Dr. Green (Tr. 488-92, 531-37). Dr. Green's examinations frequently found swelling, tenderness, and crepitation in the claimant's right knee, and sometimes decreased range of motion (Tr. 488-92, 531-37).

At the post-op appointment related to his right knee on September 20, 2012, the claimant reported to Dr. Deloache, that he also had left ankle pain and instability for many years (Tr. 499). Dr. Deloache's examination of the claimant's ankle showed slight

instability at the anterior talofibular ligament, but no effusion or edema, and he had full range of motion (Tr. 499). Dr. Deloache referred the claimant for an MRI, the results of which revealed mild ankle joint effusion with fluid around the extensor digitorum longus tendon, indicative of tenosynovitis, but was otherwise without evidence or etiology for instability or pain (Tr. 505, 507).

Dr. Green completed a Medical Source Statement ("MSS") on January 4, 2013, wherein he opined that the claimant could lift/carry ten pounds occasionally,[3] twenty-five pounds infrequently, and never twenty-six pounds or more; stand/walk for thirty minutes at a time, for less than two hours total during an eight-hour day; sit for one hour at a time, for about four hours total in an eight-hour day; needed to alternate sit/stand/walk every hour; and needed to elevate his leg forty-five degrees for two hours during the day when sitting (Tr. 484). He indicated that the claimant would be absent from work more than three times per month due to his impairments or treatment (Tr. 486). As objective support for his description of the claimant's limitations, Dr. Green referred to swelling in the claimant's right knee (Tr. 486).

As a referral from Dr. Green, the claimant presented to Dr. Zanetakis on April 9, 2013, and reported joint pain in his hands for the past year (Tr. 525-27). Dr. Zanetakis found no inflammation, synovitis, nodules, tenderness, warmth, or erythema when examining the claimant's hands (Tr. 527). X-rays taken that day revealed moderate degenerative changes at the first carpometacarpal joints bilaterally (Tr. 518). Dr.

---

[3] The form Dr. Green completed defined occasionally as up to two hours and forty minutes out of an eight-hour workday, and infrequently as one hour or less in an eight-hour day (Tr. 485).

Zanetakis diagnosed the claimant with polyarthropathy/polyarthritis and general osteoarthritis (Tr. 525). The claimant's subsequent appointments in May 2013 and June 2014 were similar (Tr. 519-23).

At the administrative hearing, the claimant testified that he experiences sharp pain in his hands and fingers after five minutes of doing activities such as changing the oil in his vehicle or putting car parts together, and that his hands ache with weather changes (Tr. 50-53). He also testified to morning stiffness in his hands, which he relieves by running them under warm water and applying a topical pain cream (Tr. 56). The claimant additionally stated that he has difficulty with his grip "pretty much all the time," and that he has pain or stiffness in his hands daily (Tr. 57-58). He reported "a lot" of trouble with his knee, that his ankle turns easily, and that he uses a cane every morning and whenever he goes to a store (Tr. 58-59). As to specific limitations, the claimant testified he could lift up to fifteen pounds, walk one-hundred and fifty feet without pain medication and one-half of a block with pain medication, stand for five minutes before needing to sit, and sit for forty-five minutes to an hour before needing to stand (Tr. 62).

In his written opinion, the ALJ thoroughly summarized the claimant's testimony from both administrative hearings, as well as most of the evidence contained in the medical record (Tr. 24-35).[4] He gave great weight to the state agency physicians' opinion that the claimant could perform light work, but included additional limitations in

---

[4] The ALJ erroneously stated that the claimant did not return to Dr. Deloache after September 2012. The record reflects appointments in October 2012, November 2012, and February 2013 (Tr. 29, 503-05).

the claimant's RFC based on evidence dated after their assessments (Tr. 35). As to Dr. Green's opinion, the ALJ recited the limitations indicated in the MSS,[5] then gave it little weight, concluding his opinion was not supported by objective evidence, inconsistent with the overall medical record, entirely subjective, and did not consider the excellent results of the claimant's July 2012 knee surgery (Tr. 35-36).

Medical opinions of a treating physician such as Dr. Green are entitled to controlling weight if "'well-supported by medically acceptable clinical and laboratory diagnostic techniques [and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). Even if a treating physician's opinions are not entitled to controlling weight, the ALJ must nevertheless determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. § 404.1527. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in § 404.1527.'"), *quoting Watkins*, 350 F.3d at 1300. The factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency

---

[5] The ALJ inaccurately described Dr. Green's lift/carry limitations as ten pounds occasionally and up to ten pounds frequently. Dr. Green's MSS stated the claimant could lift/carry ten pounds occasionally and twenty-five pounds infrequently, as such terms were defined on his form. Additionally, the ALJ did not mention Dr. Green's opinion regarding the claimant's need to elevate his legs while sitting.

between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). Finally, if the ALJ decides to reject a treating physician's opinion entirely, "he must . . . give specific, legitimate reasons for doing so[,]" *id.* at 1301, so it is "clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reasons for that weight," *id.* at 1300.

The ALJ was required to evaluate for controlling weight Dr. Green's opinions as to the claimant's functional limitations. Dr. Green's MSS contained functional limitations that the ALJ rejected because he found his opinion was not supported by objective evidence and was inconsistent with the overall medical record. In making such findings, however, the ALJ ignored Dr. Lewis's treatment notes which reflect a positive drawer test and reduced range of motion in the claimant's left ankle, as well as a recommendation for surgery to relieve some of the claimant's ankle pain (Tr. 469-72). This is clearly relevant because the claimant's ankle impairment has a direct effect on his ability to stand, walk, and sit. Thus, the ALJ erred by failing to discuss *all* of the evidence related to the claimant's impairments and citing only evidence favorable to his finding of non-disability. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."), *citing Robinson v.*

*Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) and *Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004).

Additionally, the ALJ discounted Dr. Green's opinion without specifying any inconsistencies between his opinion and the evidence of record or providing any analysis in relation to the pertinent factors set forth above. *See, e.g., Langley,* 373 F.3d at 1123 ("Because the ALJ failed to explain or identify what the claimed inconsistencies were between Dr. Williams's opinion and the other substantial evidence in the record, his reasons for rejecting that opinion are not 'sufficiently specific' to enable this court to meaningfully review his findings."), *quoting Watkins,* 350 F.3d at 1300. *See also Wise v. Barnhart,* 129 Fed. Appx. 443, 447 (10th Cir. 2005) ("The ALJ also concluded that Dr. Houston's opinion was 'inconsistent with the credible evidence of record,' but he fails to explain what those inconsistencies are.") [citation omitted]. The Commissioner argues that Dr. Green's opinion is inconsistent with evidence the ALJ summarized elsewhere in the opinion, including Dr. Green's own treatment notes, Dr. Schatzman's exam findings and opinion on vocational rehabilitation, Dr. Zanetaki's treatment notes, and Dr. Deloache's treatment notes. However, this amounts to an improper post-hoc argument, as the ALJ made no attempt to disregard Dr. Green's opinion on this basis. *See Haga,* 482 F.3d at 1207–08 ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.") [citations omitted].

Because the ALJ failed to properly evaluate the opinions of the claimant's treating physician, the decision of the Commissioner must be reversed and the case remanded to the ALJ for a proper analysis. On remand, the ALJ should evaluate Dr. Robbins' opinion in accordance with the appropriate standards and determine what impact such evaluation has on the claimant's RFC and ultimately whether he is disabled.

### Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 22nd day of September, 2017.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**